[No. 4635.   Decided September 10, 1903.]

C. W. Jones, *Respondent,* v. Stephen A. Callvert *et al.,*
Board of State Land Commissioners, Appellants.

PUBLIC LANDS — INCORPORATION IN INDIAN RESERVATION — EXECU-
TIVE ORDER.

Public lands of the general government may be made part of
an Indian reservation by means of an executive proclamation of
the president of the United States.

SAME — TIDE LANDS PATENTED TO INDIANS — TITLE OF STATE.

Under the Enabling Act (25 St. at Large, 676, § 4) for the ad-
mission of Washington into the union, requiring this state to dis-
claim all right and title to all lands lying within its limits owned
or held by any Indian or Indian tribes, and under art. 17, § 2, of
the state constitution, disclaiming title in all tide, swamp and
overflowed lands patented by the United States, the state has no
authority to sell tide lands within the limits of an Indian reser-
vation and patented to individual members of the tribe prior to
statehood.

Appeal from Superior Court, Snohomish County.—
Hon. John C. Denney, Judge.   Reversed

*W. B. Stratton,* Attorney General, for appellants.

*B. E. Padgett,* for respondent.

The opinion of the court was delivered by

Dunbar, J.—The respondent made application to the
commissioner of public lands to purchase the lands in-
volved in this case.   The application was rejected by the
board of state land commissioners on the theory that the
state had no authority to sell or dispose of said lands be-
cause they were within the boundaries of the Tulalip In-
dian reservation.   The respondent appealed from the de-
cision of the board to the superior court of Snohomish
county, which reversed the ruling of the board of state land

commissioners, and held that the lands applied for were subject to sale by the state as prescribed by law, and judgment was entered accordingly. From this judgment the board of state land commissioners appealed.

It is conceded that the lands are within the boundaries of the above-named Indian reservation, but it is claimed by the respondent that they are not embraced in said reservation, excepting through executive order of the President. A patent for a portion of these lands was, on the 1st day of April, 1885, issued and delivered to Richard Lawrence, and on the 1st day of July, 1884, a patent for the remainder of the tract was issued and delivered to Jack Wheeler and his wife. It is true that this patent incorrectly stated the name of the wife of said Wheeler, and on account of said error the original patent was, during the year 1902, surrendered to the United States, and another patent, exactly like the original except as to the date and the name of Wheeler's wife, issued and delivered in its stead to said Wheeler and his wife, Nancy. But in substance the lands were patented lands prior to the formation of the state government. We are satisfied from the record that the lands applied for were strictly within the limits of the Indian reservation, but, even if this were not true, the law provides for the executive proclamation which was made in this case, and under such proclamation they are legally within the boundaries of said reservation.

A great deal of discussion has been indulged in upon questions which it seems to us have been settled by the decisions of this court. It may be conceded that at common law the title to lands which were overflowed by the tide was in the king for the benefit of the nation, and that, as a matter of history, upon the settlement of the colonies, the rights which were held for the benefit of the nation

passed to the colonies, or to the grantees of the charters granted by the king for the benefit of the communities to be established; that, when the colonists obtained their independence, the same rights were held by the government in trust for the states which were to be carved out of the general government, and that the same rule applies to the territory acquired by the United States government since its organization. This is the general and undoubted rule; but it is equally well established, we think, that the government may prescribe limitations upon the use and ownership of these lands, and, whatever may have been the decisions on this question—and they have been more or less conflicting—under the later cases of *Shively v. Bowlby*, 152 U. S. 1 (14 Sup. Ct. 548), and *Mann v. Tacoma Land Co.*, 153 U. S. 273 (14 Sup. Ct. 822), the contention that the United States has no constitutional power to dispose of such lands under any circumstances does not obtain. But, even conceding that it did not have such power, such concession would not be available to respondent in this case, for the practical question occurs upon the right of the state to disclaim title to tide lands where that power has been exercised by the United States. We received admission into the Union of states by a compliance with the provisions of the act of Congress providing for our admission, which is termed the "Enabling Act." Enabling Act, § 4, 25 St. at Large, 676, provides that:

"The people inhabiting said proposed states do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands

shall remain under the absolute jurisdiction and control
of the Congress of the United States."

This provision of the enabling act was incorporated ver-
batim in § 1 of article 26 of the state constitution, and
became a part of the compact with the federal government
under which the state was admitted to the Union.   In
addition to this, of their own accord, and for reasons
which seemed equitable and just to the framers of the con-
stitution,·it was solemnly proclaimed in § 2 of article 17
of the constitution that the state of Washington dis-
claimed:

"All title in and claim to all tide, swamp and overflowed
lands patented by the United States: provided, the same
is not impeached for fraud."

Under this disclaimer it would seem that no argument
is necessary to justify the conclusion that the lands applied
for here, which had been patented by the United States,
and where there is no charge of fraud involved, cannot
now be sold by the state authorities, and that the state
authorities have no jurisdiction whatever over them so
far as their title is concerned.   It was held in *Scurry v.
Jones,* 4 Wash 468 (30 Pac. 726), that the disclaimer by
the state (Constitution, art. 17, § 2) of all title in and
claim to all tide, swamp, and overflowed lands patented by
the United States, while not in terms confirmatory of title
so acquired, was substantially a grant to patentees of the
interest of the state in such land.   In discussing that prop-
osition it was said:

"Under the law, as conceded by both parties, the lands
had passed absolutely to the state, subject only to such
clouds thereon as were caused by the same having been
assumed to have been granted to private individuals by
the United States.   Under such circumstances, if the state
disclaims all of its title to such lands, where the patents

had been obtained without fraud, it certainly was for the benefit of some one, and it clearly could not have been for the benefit of the United States. And as the state, in the section immediately preceding this, had asserted its title to all such lands, whether occupied or unoccupied, which had not been thus patented, it seems clear to us that the evident intent of the disclaimer was to ratify the action of the United States in the issuance of such patents. In our opinion, the interest of the state passed as fully to the grantees in such patents, or to those holding under them, as it would have done had there been express words of grant used in the constitution. Any other interpretation of the language used would deprive it of any beneficial force whatever."

Under both the letter and spirit of this decision, and of subsequent decisions of this court on the same subject, the judgment is reversed.

FULLERTON, C. J., and HADLEY, ANDERS and MOUNT, JJ., concur.